IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINO VELASQUEZ JIMENEZ,<br><br>               Petitioner,<br><br>     v.<br><br>MARKWAYNE MULLIN ET. AL,<br><br>               Respondents. | NO. EDCV 26-356-AGR<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241)** |

Before the court is Petitioner Lino Velasquez Jimenez's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the legality of the revocation of his Order of Supervision and immigration re-detention. (Dkt. No. 1.)[1] For the reasons set forth below, the Court GRANTS the Petition for Writ of Habeas Corpus.

---

[1] Citations are to the page and docket numbers generated by the Case Management Electronic Case Filing ("CM/ECF") system in the header of the document.

1

## I.

## BACKGROUND

### A. Factual Background[2]

Petitioner is a 46-year-old native and citizen of Mexico currently detained at the Adelanto detention center.  Petitioner arrived in the United States as a child and was granted lawful permanent resident status on October 6, 1984.  (Dkt. No. 4-1 at 24 (Brewer Decl., Exh. E).)  In 2001, Petitioner married his spouse, who is a United States citizen.  They have two children who are also United States citizens.  (Petition at 4.)

On May 3, 2004, Petitioner was convicted of first-degree robbery in violation of Cal. Penal Code § 211 in the Riverside County Superior Court, for which he received a four-year prison sentence.  (Dkt. No. 4-1 at 24 (Brewer Decl., Exh. E).)

On December 30, 2021, Petitioner was served a notice to appear and placed in removal proceedings.  (*Id*. at 25.)

On May 18, 2022, an Immigration Judge ("IJ") found Petitioner removable but granted deferral of removal under Convention Against Torture ("CAT") and prohibited the government from removing Petitioner to Mexico.  (*Id*. at 8-9 (Brewer Decl., Exh. B).)[3]  Following the IJ's ruling, Petitioner was detained for a mandatory

---

[2] The Court summarizes the relevant facts based on the Petition, Petitioner's *ex parte* application for temporary restraining order and attached exhibits, and Respondents' response to the order to show cause.  (*See* Dkt. Nos. 1, 4, 13.)

[3] Petitioner did not appeal and did not challenge the removal order.  (Dkt. No. 4-1 at 13 (Brewer Decl., Exh. C).)

2

90-day period under 8 U.S.C. § 1231(a)(1).  The government was unable to remove Petitioner during the statutory period and he was released from immigration custody on an Order of Supervision on August 16, 2022.  (*Id*. at 16-22, 28 (Brewer Decl., Exhs. D, F).)  Since his release, Petitioner reported regularly in accordance with the Order of Supervision according to his sister.  (*Id*. at 30 (Brewer Decl., Exh. G).)

On January 20, 2026, when he appeared for a scheduled appointment with ICE at the San Bernardino Field Office, Petitioner was detained.  (Petition at 4.)  Petitioner's supervision was revoked, he was taken into immigration custody, and was told he would be removed to an unspecified third country.  (*Id*.)  That same day, Petitioner was provided with a Notice of Revocation of Release ("Notice") and was also afforded an informal interview.  (Dkt. No. 13-1.)

### B.  Procedural Background

On January 27, 2026, Petitioner filed the Petition for Writ of Habeas Corpus challenging the legality of the revocation of his Order of Supervision, immigration re-detention, and removal to a third country.  The following day, Petitioner filed an *ex parte* application for a temporary restraining order ("TRO") seeking the same relief he sought in the Petition.  (Dkt. No. 4.)  Petitioner requested immediate release from detention under the terms of his original Order of Supervision and asked the court to enjoin Respondents from removing him to a third country without first providing him with notice and an opportunity to seek protection under

the CAT.  (Petition at 7; Dkt. No. 4 at 12.)  On January 29, 2026, the District Court denied the TRO application without prejudice.  (Dkt. No. 6.)

On March 17, 2026, upon Petitioner's request, the court issued an order to show cause, directing Respondents to show cause why the Petition should not be granted.  (Dkt. Nos. 7, 12.)  Respondents filed a response, and Petitioner filed a reply.  (Dkt. Nos. 13, 14.)  On March 30, 2026, the court held a hearing on the order to show cause and took the matter under submission.  (Dkt. No. 16.)

On April 23, 2026, Petitioner filed a supplement to reply.  (Dkt. No. 17.)

## II.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

### III.

### **DISCUSSION**

Petitioner seeks habeas and injunctive relief, contending that his re-detention violates the regulations in 8 C.F.R. §§ 241.4(l) and 241.13(i) and the Due Process Clause of the Fifth Amendment.  Petitioner contends that due process prohibits Respondents from removing him to a third country without providing notice and an opportunity to seek protection under the CAT.

Respondents contend that the Petition should be denied because Petitioner has not shown that the government lacked authority to detain him or that it revoked his Order of Supervision improperly.  Respondents argue that release is not a proper remedy for any regulatory noncompliance and that habeas corpus is not the proper vehicle for challenging third country removal.

The court concludes that: (1) Respondents' noncompliance with 8 C.F.R. §§ 241.4(l), 241.13(i) violated Petitioner's due process rights and warrants immediate release under the conditions previously set forth in his order of supervised release; and (2) Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

#### A. Due Process

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause.  *Zadvydas v. Davis*, 533 U.S. 678, 690

(2001).  The Supreme Court has long held that "the Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  *Id*. at 693.  Indeed, it recently reaffirmed that the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings."  *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025).

"Due process requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties' and that 'afford[s] a reasonable time . . . to make [an] appearance," including, in the context of immigration detention, "sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief."  *Id.* at 94-95; *see also Nadari v. Bondi*, CV-25-07893-JLS-BFMx, 2025 WL 2934514, at *3 n.2 (C.D. Cal. Sep. 3, 2025) ("Removal without notice and an opportunity to be heard therefore raises serious due process issues.").  As one district court recently recognized:  "When someone's most basic right of freedom is taken away, that person is entitled to at least some minimal process; otherwise, we all are at risk to be detained – and perhaps deported – because someone in the government thinks we are not supposed to be here."  *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 (W.D.N.Y. 2025); *see also A.A.R.P.*, 605 U.S. at 94 (procedural due process protects against "'mistaken or unjustified deprivation of life, liberty, or property'" (citation omitted)).

**B. Grounds One and Two: Revocation of Order of Supervision**

It is undisputed that Petitioner is subject to a final order of removal that granted him deferral under the CAT. The issue is whether Respondents violated the applicable regulations and Petitioner's due process rights when they revoked his Order of Supervision and re-detained him on January 20, 2026. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("This case is about ICE's authority to re-detain [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision].").

**1. Statutory and Regulatory Framework**

The provisions of 8 U.S.C. § 1231(a) govern the detention, release, and removal of noncitizens subject to an order of removal. A noncitizen subject to a final order of removal is subject to a 90-day detention period while removal is pursued. 8 U.S.C. § 1231(a)(1). However, if the noncitizen is not removed during this 90-day period, they are "subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The noncitizen may be detained beyond the 90-day removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6).

The terms of supervised release are governed by 8 C.F.R. §§ 241.4 and 241.13, including the conditions and procedures under which the government may revoke supervised release. *See Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025); *see also Escalante v. Noem*, No. 9:25-CV-00182-

MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for . . . those who are re-detained upon revocation of their supervised release.").

Relevant here, supervised release granted to a noncitizen under the final order of removal may be revoked "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Supervised release of noncitizens granted deferral of removal is subject to the provisions of 8 C.F.R. § 241.4(l). Previously granted supervised release may be revoked by the "Executive Associate Commissioner" or the "district director . . . when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). To revoke release under this section, the designated official must find that: (i) "[t]he purposes of release have been served"; (ii) the noncitizen has violated a condition of release; (iii) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against" the noncitizen; or (iv) the noncitizen's conduct, "or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). "Upon revocation," the noncitizen must be "notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.4(l)(1). Once the noncitizen is re-detained, they must "promptly" be provided with "an initial informal interview . .

. to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id*.

### 2. Analysis

Petitioner contends that the government violated 8 C.F.R. §§ 241.13(i)(2) and 241.4(I), as well as his due process rights, when it revoked his order of supervision.  Respondents contend that Petitioner's detention is lawful because 8 C.F.R. § 241.13 authorized the government to revoke his release as it determined, based on "changed circumstances" as cited in the Notice, that there was a "significant likelihood that the alien may be removed in the reasonably foreseeable future."

For the reasons set forth below, the court concludes that  Respondents failed to: (1) provide Petitioner with notice that adequately informed him of the reasons his supervised release was revoked; (2) show sufficient evidence that prior to, or at the time of Petitioner's re-detention, a determination based on changed circumstances took place that justified the revocation of Petitioner's release; and (3) provide Petitioner with a meaningful opportunity to contest his detention when it conducted the informal interview on the same day it provided him with the deficient notice.  The court further concludes that Respondents violated his due process rights.

### a. Lack of Adequate Notice

Sections 241.4 and 241.13 require "at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen

notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. CV-25-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026). The Notice given to Petitioner states only that his supervised release was revoked because (1) ICE determined that "there are changed circumstances in your case" and (2) "there is a significant likelihood of removal in the reasonably foreseeable future." (Dkt. No. 13 at 9.)  The Notice states that "ICE has determined it is appropriate to enforce the removal order and remove [Petitioner] to a third country." (*Id.*)

"[C]ourts in this district and across the country have held that such vague, boilerplate statements are insufficient notice." *Gutnik v. Bondi*, No. EDCV 26-00908-WLH (ACCV), 2026 WL 700546, at *2 (C.D. Cal. Mar. 5, 2026) (finding similar language insufficient under § 241.4; collecting cases); *Morales Sanchez v. Bondi*, 811 F. Supp. 3d 1166, 1175 (C.D. Cal. 2025) ("[A] generic notice stating only that officials 'review[ed] [the] file' and determined 'there are changed circumstances' fails to comply with the regulation or provide meaningful notice sufficient for due process[.]") (*quoting Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225 (D. Mass. 2025)); *see also Martinez v. Noem*, No. SACV 26-00361-KK (DTB), 2026 WL 538034, at *6 (C.D. Cal. Feb. 23, 2026) (finding boilerplate notice insufficient when "vague and conclusory assertions do not identify any specific 'changed circumstances' or otherwise explain why Petitioner's release is being revoked"); *Esmail v. Noem*, No. CV-25-08325-WLH-RAOx, 2025 WL

3030590, at *5 (C.D. Cal. Sep. 12, 2025) (finding similar notice was "plainly insufficient to convey to Petitioner the grounds for revocation").

The boilerplate notice failed to notify Petitioner "of the reasons for revocation" as required by the regulations and deprived him of a meaningful opportunity to contest the basis for revocation.  *Morales Sanchez*, 811 F. Supp. 3d 1175; *Gutnik*, 2026 WL 700546, at *2; *see Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition."); *Tran v. Noem*, No. CV-25-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) ("In the stressful context of an [ ] arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the [noncitizen] can prepare for the post deprivation informal interview.").  Absent any meaningful information, a petitioner is deprived of the opportunity to "respond to the reasons for revocation stated in the [N]otice" in the informal interview.  8 C.F.R § 241.13(3); *see Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing."); *see also McSweeney v. Warden*, No. CV-25-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct, 24, 2025) ("Petitioner could not have

meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons.").  Because the government gave Petitioner only a boilerplate notice, the government failed to comply with applicable regulations and deprived Petitioner of due process.  *See Delkash v. Noem*, EDCV 25-01675-HDV-AGRx, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."); *see also Morales Sanchez*, 811 F. Supp. 3d at 1176 ("The record demonstrates that the Notice of Revocation was facially deficient, procedurally flawed, and legally insufficient to satisfy either 8 C.F.R. § 241.13(i)(3) or basic due process protections"); *Phan v. Noem*, No. CV-25-02422-RBM-MSB, 2025 WL 2898977, at *3 (S.D. Cal. Oct. 10, 2025) ("ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.").

### b. Regulatory Authority

When revoking supervision under § 241.13(i)(2), the government bears the burden of demonstrating a change in circumstances that establishes the noncitizen's removal has become reasonably foreseeable.  8 C.F.R. § 241.13(i)(2); *see Gutierrez v. Noem*, No. CV-25-02668-DOC-RAO, 2025 WL 3247769, at *4 (C.D. Cal. Oct. 31, 2025) ("Respondents have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future and have not done so."); *Sun v. Noem*, No. CV-25-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's

own regulations . . . place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Yan-Ling X.*, 813 F. Supp. 3d at 1164 ("[T]he Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.").

Section 241.13(f) sets forth the factors the agency must consider "including, but not limited to, the history of the [noncitizen's] efforts to comply with the order of removal, the history of the Service's efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question."  8 C.F.R. § 241.13(f).  Although "there is no presumptive period of time within which the [noncitizen's] removal must be accomplished, [] the prospects for the timeliness of removal must be reasonable under the circumstances."  *Id.*

"[T]he Government lacks regulatory authority to revoke a noncitizen's release, and violates its own regulations, when it is unable to show sufficient evidence that a determination took place before, or at, the time it re-detained petitioner, based on changed circumstances, which justified the revocation of petitioner's release."  *Kiwana v. LaRose*, 2026 WL 102661, at *2 (S.D. Cal. Jan. 14, 2026) (collecting cases).

13

The record is devoid of evidence that would support Respondents' position that there was a change of circumstances indicating a significant likelihood that Petitioner will be removed to a third country in the reasonably foreseeable future.[4] Petitioner was ordered removed on May 18, 2022, four years ago, and the Government has been unable to effectuate Petitioner's removal from the United States.  Respondents have not argued, let alone established, that any of the § 241.13(f) factors weigh in favor of a finding that there has been a change in circumstances justifying Petitioner's re-detention.  *See* 8 C.F.R. § 241.13(f).  The record is silent as to the government's ability to remove Petitioner to any third country in the reasonably foreseeable future.  It is unknown whether the Government has requested a travel document for Petitioner.[5]  *See Abkarian v. Warden*, No. EDCV 25-03584-ODW (AGR), 2026 WL 127941, at *3 (C.D. Cal. Jan. 12, 2026) ("Courts considering this inquiry have generally focused on whether a petitioner has received, or will receive, travel documents that would make the petitioner's removal possible."); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1196 (W.D. Wash. 2025) ("[R]espondents have offered no evidence that travel documents for petitioner have even been requested from any third country.").  Although Respondents acknowledge that they may not remove Petitioner to Mexico, they have yet to identify a country to which they seek to

---

[4] Respondents have not alleged that Petitioner violated the terms and conditions of his release.  Moreover, there is no argument or evidence Petitioner poses a flight risk.

[5] In his supplemental briefing, Petitioner contends that "ICE has failed to obtain removal documents."  (Dkt. No. 17 at 3.)

remove Petitioner, provide any evidence to show that the designated country has agreed to accept him, or state what if any steps have been taken to effectuate such removal.  *See, e.g., Yan-Ling X.*, 813 F. Supp. 3d at 1164 ("The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur.  Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point . . . is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" (citation omitted)).

At the March 30, 2026, hearing, the government identified a request for third country removal as the sole step taken and said that, once a third country is identified, Petitioner will be provided with a notice informing him of the country and date of removal.  (*See* Dkt. No. 16.)  This is insufficient.  *See Roble v. Bondi*, No. CV-25-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ."); *see also Hoac v. Becerra*, No. CV-25-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Nguyen*, 2025 WL 1725791, at *4 (noting respondents "have not identified what concrete steps ICE has taken to process" the travel document or whether request was submitted to removal country).  The mere existence of an

unexecuted order of removal – the sole fact established in the record thus far – does not suffice.  *See Kiwana*, 2026 WL 102661, at *4.

Under these circumstances, the Government failed to satisfy the regulations governing revocation of supervised release.  *See Sun*, 2025 WL 2800037, at *2 ("Because the Government plainly fails to meet its own regulations by determining that, 'on account of changed circumstances . . . there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future,' the Court finds Petitioner is likely to succeed on his claim that ICE was not entitled to revoke Petitioner's Order of Supervision under 8 C.F.R. § 241.13(i)(2).").[6]

### c. Failure to Provide Petitioner with Meaningful Opportunity to Be Heard

The purpose of the informal interview is to give the noncitizen an opportunity to contest re-detention by adequately responding to the reasons for revocation provided in the Notice.  *See* 8 C.F.R § 241.13(i)(3).  To overcome the Notice's stated justifications, and thus free themselves from re-detention, "[t]he [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision."  *Id*.

---

[6]  It also appears the revocation decision was not made by an official vested with the requisite authority.  8 C.F.R. § 241.4(l); *see also Ceesay*, 781 F. Supp. 3d at 160 (holding "Executive Association Commissioner" in § 241.4(l) now refers to "Executive Associate Director of ICE").  Petitioner's Notice states the revocation was ordered by "SDDO, San Bernardino, CA."  (*See* Dkt. No. 13 at 10.)  SDDO, which stands for Supervisory Detention and Deportation Officer, is not one of the officials identified in the Regulation.  *See* 8 C.F.R. § 241.4(l).

The record reflects that Petitioner did not receive a meaningful opportunity to contest his re-detention.

Petitioner's informal interview occurred on the same day Petitioner was taken into immigration custody and served with the Notice.  (Dkt. No. 13 at 9-13.) Courts have found that, "when the informal interview is conducted on the same day the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful."  *Kiwana*, 2026 WL 102661, at *6; *see also Abdullah v. Noem*, No. CV-26-176-BJC-BLM, 2026 WL 559774, at *3 (S.D. Cal. Feb. 27, 2026).  The circumstances of Petitioner's interview are almost indistinguishable from those in *Kiwana*.  Petitioner was re-detained on January 20, 2026, at 14:00.  (Dkt. No. 13 at 10.)  After serving Petitioner with a Notice devoid of the factual basis for revocation of supervision or the name of the country to which he would be removed, Respondents conducted his informal interview.  (*Id*. at 9-12.)  This chain of events deprived Petitioner of the "opportunity to be heard, in a meaningful manner and at a meaningful time." *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976); *see also Kiwana*, 2026 WL 102661, at *6 (finding Government violated due process when Petitioner was "subject[ed] to an extremely brief timeline and was forced to blindly contest his detention because his Notice was defective, as it lacked sufficient detail and/or facts").  The *pro forma* nature of Petitioner's informal interview is evidenced by the absence of any substantive information addressing the alleged grounds for

revocation or Petitioner's attempt to rebut them in his Alien Interview Form.  The

Form contains Petitioner's name, alien number, and location; the interviewing

officer's name and date; the date Petitioner was re-detained; the interviewer's

signature; and is otherwise blank.  (Dkt. No. 13 at 11-12.)  The space provided for

Petitioner's oral response is left blank, as are the check boxes next to "Written

Statements" and "Documents Provided."  (*Id*. at 11.)  Under each category, the

interviewer had the option to mark whether Petitioner provided or did not provide

any written statements and/or documents.  (*Id*.)  The interviewing officers instead

left all of them blank, leaving the court to guess whether Petitioner made any

statements or offered any documents, and if so, the legal significance of

Petitioner's proffered evidence.  (*Id*.)[7]

As discussed above, given that the Notice did not articulate the basis for

revocation, Petitioner was deprived of the meaningful opportunity to respond or

provide relevant statements or documents.  *Morales Sanchez*, 811 F. Supp. 3d

1176 ("ICE also failed to identify any specific changed circumstances, leaving

Petitioner unable to meaningfully respond."); *see Minassi v. Noem*, No. EDCV 26-

00723-RGK (AYP), 2026 WL 923289, at *7 (C.D. Cal. Apr. 1, 2026) ("What results

from such a situation is a deprivation of any 'meaningful opportunity' for a

petitioner to be heard on the incredibly important issue of re-obtaining their

freedom.").

---

[7] At the hearing, Respondents' counsel stated that Petitioner refused to sign the Form.  However, that does not explain why the interviewing officer left the rest of form blank.

Accordingly, Respondents failed to comply with due process.  *See Delkash*, 2025 WL 2683988, at *5  (collecting cases that have "unequivocally found that the government's failure to follow its release revocation procedures . . . renders the re-detention unlawful"); *Gutnik*, 2026 WL 700546, at *3 (same); *Phan*, 2025 WL 2898977, at *3 ("ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights."); *Hoac*, 2025 WL 1993771, at *5 ("[T]he court concludes that Petitioner has shown a likelihood of success on the merits of his claims that his re-detainment is unlawful because ICE has not complied with the controlling regulations to re-detain him."); *see also Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747 (S.D. Tex. 2008) (finding 8 C.F.R. § 241.13 reflects the *Zadvydas* Court's concerns and "provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements.  Because these regulations confer important rights upon aliens ordered removed, DHS is bound by these regulations.").

### d.  **Appropriate Relief**

The parties disagree about the appropriate remedy.  Petitioner seeks release from detention under the terms of his original order of supervision.  Respondents argue that release is not the proper remedy even if procedural inadequacies are found.  Rather, Respondents urge that the appropriate remedy would be rectifying the procedural deficiency.

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484.  A court may grant habeas corpus relief to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).

Courts within the Ninth Circuit have repeatedly found release to be the proper remedy under similar circumstances.  *See, e.g.*, *Morales Sanchez*, 811 F. Supp. 3d 1176 ("On the basis that Respondents committed three regulatory violations, Petitioner is entitled to release."); *Gutnik*, 2026 WL 700546, at *3 ("Many courts – including this one – have unequivocally found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release."); *see also Cruz v. Rios*, No. EDCV 26-01374-MWF (DSR), 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (rejecting Government's argument that, "even if there were some violation of a particular regulatory procedure here . . . the appropriate remedy would be to rectify that specific procedural issue[]"); *Truong v. Noem*, No. CV-25-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (holding that, "when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered"; collecting cases); *Rokhfirooz v. Larose*, No. CV-25-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (collecting cases).

Indeed, when a noncitizen has been unlawfully re-detained, immediate release from custody is the remedy that "return[s] [Petitioner] to the status quo before his release was improperly revoked."  *See Hoang v. Noem*, No. CV 25-3177-JLS (RAO), 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (concluding merely ordering ICE to provide "initial informal interview[,]" after "more than two months [of] re-detention, would not cure the violation suffered by" petitioner); *Phan v. Beccerra*, No. CV-25-01757-DC-JDP, 2025 WL 1993735, at *6 (E.D. Cal. July 16, 2025) ("Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained[.]"); *Pinchi v. Noem*, No. CV-25-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding "moment prior to the Petitioner's likely illegal detention" was status quo); *see also Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("[T]he 'status quo' refers to the legally relevant relationship between the parties before the controversy arose.") (emphasis and citation omitted).  The court concludes that release of Petitioner from unlawful detention is the appropriate relief in this case.[8]

---

[8]  In a supplemental brief, Petitioner argues that his detention has become presumptively unreasonable in violation of due process.  (Dkt. No. 17.) Petitioner's detention exceeded the 6-month mark on April 20, 2026.  Having found that Petitioner is entitled to relief on the grounds that his re-detention violated applicable regulations and due process, the court declines to address Petitioner's prolonged detention argument.

## C. Ground Three: Third Country Removal[9]

When a noncitizen is ordered removed from the United States, an immigration judge must identify a removal country or alternative countries to which the noncitizen must be removed.  *See Hadera v. Gonzales*, 494 F.3d 1154, 1156 (9th Cir. 2007); 8 C.F.R. § 1240.12(d).  If the Government is unable to remove the noncitizen to the designated country, the Government retains authority to remove the noncitizen "to any other country as permitted by section 241(b) of the Act."  8 C.F.R. § 1240.12(d).  However, the Government may not remove a noncitizen to any country if his or her "life or freedom would be threatened in that country because of [his or her] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); *see also Najjar v. Lunch*, 630 Fed. Appx. 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

The immigration judge ordered Petitioner removed to Mexico but granted deferral of removal under the CAT.  No alternative country was designated or identified.  Petitioner challenges the Government's ability to remove him to a yet-to-be-identified third country without first providing notice and an opportunity to seek protection under Article III of the CAT.  Respondents did not address the

---

[9] The phrase "third country" is not a defined term in the INA or its implementing regulations.  *See* 8 U.S.C. § 1101.  As used by the parties, the phrase refers to a country not designated by the immigration judge during the removal proceedings.

third country removal issue in their filing.  At the March 30, 2026, hearing, however, Respondents argued that a habeas petition is not the proper vehicle for challenging third country removal and that Petitioner is free to move to reopen his immigration case if he wishes to challenge the third country designation.

The court is not persuaded by Respondents' arguments.  Numerous courts within this Circuit have found habeas proceedings to be a proper vehicle for challenges to third country removal.  *See Ortega v. Kaiser*, No. CV-25-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (finding no bar to habeas review when petitioner "does not seek review of 'the regulations adopted to implement' CAT or 'claims considered under' CAT" but "[i]nstead [] asks not to be detained or removed without first receiving due process as to any CAT claim he might have for a third country to which the Government seeks his removal"); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) (finding habeas action a proper vehicle for petitioner's "challenge[] of DHS's attempts, *outside* of removal proceedings, to designate Somalia without reopening his proceedings so that an IJ could make the designation in the first instance and/or determine whether petitioner's life or freedom would be threatened in that country" (original emphasis); *see also Baltodano*, 815 F. Supp. 3d at 1196 (assuming jurisdiction and deciding petitioner's third country removal claim).  A number of courts have granted habeas relief and found the government's policy of failing to notify noncitizens subject to removal of their rights to challenge removal to a particular country violative of due process.  *See Martinez*, 2026 WL 538034, at *8 ("ICE's

[third country removal] policy plainly violates the Due Process Clause"); *Esmail*, 2025 WL 3030589, at *6-7 (same); *Vu v. Noem*, No. CV-25-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent. . . . Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions."); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1187-88 (E.D. Cal. 2025); *see also Giebashvili v. Noem*, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (S.D. Cal. Jan. 15, 2026) (collecting cases). These decisions are rooted in the well-established principle that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation *to the country to which they will be deported* violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (emphasis added); *see also Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) ("Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment.").

District courts have placed the burden on the government to move to reopen so that Petitioner is afforded the opportunity to apply for protection from removal under CAT. *See Aden*, 409 F. Supp. 3d at 1006 (in context of third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due process in these circumstances."); *see also Baltodano*, 815 F. Supp. 3d at 1200 ("[A] petitioner must be able to pursue his claim for withholding of deportation in

*reopened* removal proceedings before an immigration judge." (emphasis in original); *Kout v. Bondi*, No. CV-25-02313-BAT, 2025 WL 3763930, at *5 (W.D. Wash. Dec. 30, 2025) ("[I]f DHS seeks to remove Petitioner to a third country, *it must move to reopen* Section 240 removal proceedings, and a hearing must be held before an immigration judge so the petitioner can apply for relief as to the specific country of removal." (emphasis in original); *Cao v. Scott*, No. CV-25-02373-RSM-GJL, 2026 WL 279352, at *4 (W.D. Wash. Jan. 26, 2026) (same), *accepted by* 2026 WL 285817 (W.D. Wash. Feb. 3, 2026).  For example, in *Nguyen v. Charles*, the court enjoined respondents from removing Petitioner without providing him "a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal" and, "if petitioner is found to have demonstrated 'reasonable fear' of removal to the designated country, *respondents must move to reopen petitioner's immigration proceedings*."  No. CV-25-1592 TLN CSK, 2026 WL 861641, at *3 (E. D. Cal. Mar. 30, 2026) (added emphasis), *accepted by*, 2026 WL 1022786 (E.D. Cal. Apr. 14, 2026).  The court finds these cases persuasive and adopts the same approach.[10]

Given that Petitioner was granted deferral of removal to Mexico, there currently exists no country to which Respondents could remove Petitioner without

---

[10]   Respondents have yet to identify a third country to which they seek to remove Petitioner.  Without this basic information, it is difficult to conceive how Petitioner could file for relief or make a showing that his life or freedom would be threatened in a third country because of his race, religion, nationality, membership in a particular social group, or political opinion.  *See* 8 U.S.C. § 1231(b)(3)(A).

25

first affording him the opportunity to present a fear-based claim as to that country. To comply with due process, this opportunity must include "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Aden*, 409 F. Supp. 3d at 1009.

Accordingly, the court will enjoin Respondents from removing Petitioner to any third country without first providing him and his counsel with notice and a meaningful opportunity to respond in reopened removal proceedings in compliance with the applicable statutory law and due process. *See Juarez v. Noem*, No. CV-26-00014-MWC-KS, 2026 WL 127607, at *5 (C.D. Cal. Jan. 9, 2026) ("enjoin[ing] Respondents from removing Petitioner . . . to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country.").

## IV.

## ORDER

For all the foregoing reasons, IT IS ORDERED that the Petition for Writ of Habeas Corpus is GRANTED and:

1. Respondents shall immediately release Petitioner from immigration custody under the same terms of supervision that applied before his re-detention. Respondents shall file a notice of compliance to this effect by no later than seven days after entry of this Order.

2. Respondents are enjoined from revoking Petitioner's release and re-detaining Petitioner absent compliance with applicable regulatory and

26

constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. §§ 241.13(i), 241.4(l).

3. Respondents are enjoined from removing Petitioner to a third country without notice to him and his counsel, and a meaningful opportunity to respond and seek protection under the Convention Against Torture in compliance with the statute and due process in reopened removal proceedings.

4. Judgment shall be entered accordingly.

DATED: May 18, 2026

_____
ALICIA G. ROSENBERG
United States Magistrate Judge